IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

RYAN HYSELL and CRYSTAL HYSELL,
on behalf of their daughter, A.H., a minor,

    Plaintiffs,

v.                                        Civil Action No. 5:18-cv-01375

RALEIGH GENERAL HOSPITAL,
and THE UNITED STATES OF AMERICA,

    Defendants.

**MEMORANDUM IN SUPPORT OF
DEFENDANT UNITED STATES OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiffs have asserted a medical negligence action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, against defendant United States of America contending that certain negligence by deemed employees of the United States proximately caused brain damage to plaintiff A.H. *See* ECF No. 1. After engaging in extensive discovery in this case, it is clear that, even if the plaintiffs' allegations of negligence are assumed to be true, which the United States specifically denies, that the plaintiffs have to prove that the alleged negligence of the United States proximately caused plaintiffs' alleged injuries. Neither the plaintiffs' experts nor plaintiff A.H.'s treating physicians have testified in discovery that they will express opinions on causation or that they will express opinions as to when plaintiff A.H.'s alleged brain damage and injuries occurred. Since the plaintiffs are unable to meet their burden to provide proximate causation under W. Va. Code § 55-7B-3, the United States is entitled to summary judgment as a matter of law.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

A party is entitled to summary judgment when the pleadings, depositions, and affidavits in the record show "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate, after adequate time for discovery, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To resist summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986).

Moreover, a nonmovant may not rest on the pleadings alone and must show that specific material facts exist by offering more than a mere "scintilla of evidence" in support of her position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (internal citations omitted). *See also Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. To withstand a motion for summary judgment, the non-moving party must produce competent evidence to reveal the existence of a genuine issue of material fact for trial.

The non-moving party has the ultimate burden of demonstrating a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 322–23 (1986). Furthermore, conclusory or speculative allegations do not suffice, nor does a "mere scintilla of evidence" sufficient to

2

rebut a motion for summary judgment. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002); *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999).

In this case, discovery has come to a close, and all of plaintiffs' expert witnesses who will be called to testify at trial have been deposed. Plaintiffs have failed to prove an essential element of their case—proximate causation. Since they have failed to prove this essential element of their case as required under W.Va. Code § 55-7B-3, the United States is entitled to summary judgment as a matter of law.

### III. PLAINTIFFS' BURDEN OF PROOF

In an FTCA action, the substantive law of the place where the negligence is alleged to have occurred governs the action. 28 U.S.C. § 2672. Here, plaintiffs claim that an employee of a federally supported health clinic, Debra Crowder,[1] was negligent in her care and treatment rendered during the labor and delivery involving plaintiff Crystal Hysell and A.H., at Raleigh General Hospital in Beckley, West Virginia, on or about October 29, 2010. *See* ECF No. 1.

Under West Virginia law, negligence actions involving health care services rendered by a health care provider such as Ms. Crowder are governed by the West Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1, *et seq.* The burden of proof imposed upon plaintiffs seeking to recover damages for alleged medical negligence is set forth under the MPLA in W. Va. Code § 55-7B-3, which states:

> § 55-7B-3. Elements of proof.
>
> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:

---

[1] As an employee of a federally supported health clinic (Access Health), Ms. Crowder is deemed a federal employee covered by the FTCA under federal law. *See* 42 U.S.C. § 233.

3

> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.
>
> (b) If the plaintiff proceeds on the "loss of chance" theory, i.e., that the health care provider's failure to follow the accepted standard of care deprived the patient of a chance of recovery or increased the risk of harm to the patient which was a substantial factor in bringing about the ultimate injury to the patient, the plaintiff must also prove, to a reasonable degree of medical probability, that following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery or would have survived.

*Id. See also Rubin v. United States*, 88 F. Supp. 2d 581, 597 (S.D. W. Va. 1999) (holding that the MPLA governs malpractice actions under West Virginia law and specifically applying W. Va. Code § 55-7B-3).

Under W. Va. Code § 55-7B-3, plaintiffs have the burden of proving both a breach of the standard of care and that any alleged breach proximately caused the plaintiffs' alleged injuries and damages. As the West Virginia Supreme Court of Appeals has repeatedly emphasized, "In a malpractice case, the plaintiff must not only prove negligence but must also show that such negligence was the proximate cause of the injury." Syl. Pt. 4, *Short v. Appalachian OH–9, Inc.*, 507 S.E.2d 124 (W. Va. 1998). *See also Dellinger v. Pediatrix Med. Grp.*, 750 S.E.2d 668, 676 (W. Va. 2013) (plaintiff must prove both negligence and proximate causation, citing *Short*). To establish proximate causation in a medical negligence case, a plaintiff must prove such a causal link through expert witness testimony. *See Fitzgerald v. Manning*, 679 F.2d 341, 350 (4th Cir. 1982) ("Just as negligence or violation of the standard of care must ordinarily rest on expert opinion evidence, so proof of causation—that is that the defendant's negligence was 'more

4

likely' or 'more probably' the cause of the plaintiff's injury—requires expert testimony." (footnote omitted)); *Bellomy v. United States*, 888 F. Supp. 760, 764 (S.D. W. Va. 1995) (malpractice case and causation must ordinarily be proved through expert testimony). The failure to prove the causal link between the alleged negligence and the alleged injury means that the plaintiff has a fatal defect in his or her case which requires dismissal of the case by summary judgment. *See also Dellinger*, 750 S.E.2d at 677 ("The lack of expert medical testimony as to causation was therefore equally fatal to petitioner's case as her failure to present a disputed issue of material fact on medical negligence."); *Farley v. Shook*, 629 S.E.2d 739, 745 (W. Va. 2006) ("Thus, because Dr. Weihl was the only expert designated to provide standard of care and causation testimony against the emergency room physician and the hospital, and because he was unable to provide the necessary causal links, the Farleys were unable to prove their case against these two appellees. The circuit court was correct in awarding summary judgment to Dr. Fornari and St. Mary's, and we accordingly affirm the circuit court's ruling."); *Short*, 507 S.E.2d at 131–32 (failure to present expert witness testimony on causation was fatal to plaintiff's case and required entry of summary judgment); *Hicks v. Chevy*, 358 S.E.2d 303, 305 (W. Va. 1987) ("Proof that the negligence or want of professional skill was the proximate cause of the injury of which the plaintiff complains must ordinarily be by expert testimony as well.").

Here, plaintiffs are unable to present any expert witness testimony to link their allegations of negligence to the events surrounding the labor and delivery involving A.H.'s birth.[2] This lack

---

[2] Two treating physicians were deposed during discovery. Dr. Elizabeth Schorry, a geneticist who was not disclosed as an expert by the plaintiffs, testified that issues regarding hypoxia and the timing of the injury to A.H. were outside the field of her medical expertise. *See* Deposition of Dr. Elizabeth Schorry at pp. 29, 69-70 (Exhibit H). Dr. Todd Arthur, a child neurologist, testified that he was unable to determine the cause of A.H.'s problems. He was not disclosed as an expert witness by the plaintiffs either. *See* Deposition of Dr. Todd Arthur at pp. 28-29 (Exhibit I).

of expert testimony is a fatal defect which requires the entry of summary judgment on behalf of the United States.

### IV. PLAINTIFFS HAVE FAILED TO PRESENT EXPERT TESTIMONY TO CAUSALLY LINK THEIR ALLEGATIONS OF NEGLIGENCE TO ANY ALLEGED NEGLIGENCE OF THE UNITED STATES

In this case, a review of the plaintiff's expert witness testimony clearly reveals that the plaintiffs cannot meet their burden on proximate causation. Plaintiffs have disclosed seven expert witnesses. Five of the expert witnesses have testified at depositions that they do not intend to provide any opinions on causation. The remaining two expert witnesses have testified at depositions as to the cause of A.H.'s brain damage, but they are unable to link that cause to the events surrounding A.H.'s birth because they cannot testify as to when that brain damage occurred.

#### A. John Fassett, Certified Nurse Midwife

Plaintiffs disclosed John Fassett, a certified nurse midwife, as an expert on midwifery who will testify at the trial of this case. Mr. Fassett has testified at his deposition that he will not provide any opinions on causation:

Q. Are you intending to give any opinions on causation in this case?

A. I am not.

Deposition of John Fassett at p. 12 (Exhibit A).[3]

---

[3] References to Exhibits are references to exhibits attached to the Motion for Summary Judgment filed by the United States.

### B.  Patricia Connors, RN

Plaintiffs disclosed Patricia Connors as a nursing expert.  She testified at her deposition that she would not be expressing any causation opinions:

> Q. All right. Let's go over your deposition statement or your expert statement then as shown in Exhibit 2.  You start off with a brief summary, and you have some observations about what happened after birth, after the delivery, to the child. Let me ask you if you intend to offer any opinions regarding causation or damages in this case.
>
> A. No, I don't.

Deposition of Patricia Connors at pp. 27–28 (Exhibit B).

### C.  Dr. A.M. Iqbal O'Meara

Dr. O'Meara was disclosed as a pediatric critical care physician.  She testified at her deposition that she would not be expressing any causation opinions:

> Q. All right.  Let's take a look at the No. 1 opinion that you have in this case. Oh.  Let me go back.  Are you intending to give causation opinions in this case?
>
> A. No.

Deposition of Dr. A.m. Iqbal O'Meara at pp. 50–51 (Exhibit C).

### D.  Laura Lampton, RN

Laura Lampton, RN, was disclosed as a life care planner expert witness in this case.  She testified at her deposition that she would not be expressing any causation opinions in this case:

> Q. You're not rendering opinions as to the cause of A.H.'s alleged injuries in this case?

> A. Correct.

Deposition of Laura Lampton, RN, at p. 18 (Exhibit D).

### E. Chad Staller, JD, MBA MAC CVA

Plaintiffs disclosed Chad Staller as an economic expert witness. Mr. Staller testified at his deposition that he was not qualified to provide any causation opinions in this case and would not be providing any such opinions:

> Q. You would agree that you're not qualified to give opinions on the applicable standard of care for a hospital or a nurse?
>
> A. Sure.
>
> Q. As you sit here today, you do not tend to render opinions as to the cause of [A.H.'s] alleged injuries in this case?
>
> A. Nothing with regard to cause.

Deposition of Chad Staller at p. 25 (Exhibit E).

### F. Dr. Jerome A. Barakos

Dr. Barakos was disclosed as a neuroradiology expert by the plaintiffs. Dr. Barakos testified that he saw evidence of a hypoxic injury which he diagnosed as periventricular leukomalacia ("PVL"). *See* Deposition of Dr. Jerome A. Barakos at pp. 22, 30 (attached as Exhibit E). Dr. Barakos stated that it was a "remote" injury, but he was unable to state when that injury occurred. Dr. Barakos made it clear that he would not be expressing any opinions as to the timing of this injury:

> Q. Are you able to time the insult to any degree other than the fact it's a remote injurious insult?

8

>A. No, sir. Typically we're in a position to state that this is an abnormal finding that would be associated with hypoperfusion hypoxia, and then turn it over to the clinical experts or the clinicians caring for the child to ascertain what potential sentinel event would be associated with this process.
>
>Q. And in this particular case, are you going to come to trial and give an opinion any more definitive about the timing of the insult other than what you've just mentioned?
>
>A. No, sir.

Deposition of Dr. Barakos at p. 18 (attached as Exhibit E). He later reiterated the same opinion at his deposition:

>Q. And do you have any clinical information at all that was provided to you that allows you to come up with a more precise opinion regarding the timing of the insult that occurred to this child?
>
>A. Well, sir, in that regard, I've already outlined. I'm deferring to the clinical experts in that regard and will not offer an opinion.

*Id.* at pp. 19–20.[4]

### G. Dr. Thomas Rugino

Dr. Rugino is a physical medicine and rehabilitation physician disclosed as an expert witness by the plaintiffs. He testified at his deposition that he believed A.H. had a brain injury

---

[4] Dr. Barakos' deferral to another specialty on the timing issue further reinforces the fact that he has no opinion on the timing issue. *See Farley*, 629 S.E.2d at 745 ("As to any questions regarding causation, Dr. Weihl stated that he would have to defer to another specialty, and he specifically mentioned an infectious disease expert would be the appropriate type of practitioner to answer those questions. Thus, Dr. Weihl was unable to provide any testimony regarding causation as it relates to Dr. Fornari or St. Mary's.").

due to PVL. Deposition of Dr. Thomas Rugino at p. 37 (Exhibit G). However, Dr. Rugino testified that he could not opine as to the timing of the injury:

> Q. So, as we sit here today, you're not going to come to trial and testify to a reasonable degree of medical probability as to when the hypoxic injury occurred; is that correct?
>
> A. No.
>
> Q. That's not correct or that's correct?
>
> A. Oh, I'm sorry.
>
> Q. I mean --
>
> A. I have no intention of testifying at trial as to the timing of the injury.

*Id.* at p. 69.

## V. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF PROXIMATE CAUSATION

As the forgoing testimony makes clear, none of the plaintiffs' experts can provide the causal link between the events surrounding the labor and delivery of Crystal Hysell and the birth of A.H. None of these experts will testify that A.H.'s brain damage is causally linked to any hypoxic events which occurred at that time. Even if plaintiffs can establish that hypoxia occurred at that time, they cannot prove by a preponderance of the evidence from their expert testimony that A.H.'s brain injuries occurred at that time. No expert has stated that they will testify that A.H.'s brain injuries occurred at that time.

Under West Virginia law, the failure to establish that causal link through expert witness testimony is fatal to the plaintiffs' case. *Cf. Nottingham v. United States*, No. 2:16-cv-03022, 2017 WL 3026926, at *7 (S.D. W. Va. July 17, 2017) (granting summary judgment for United

States in medical malpractice case because the plaintiff failed to provide proper expert testimony under W. Va. Code § 55-7B-3 establishing a breach in the standard of care and that the purported breach proximately caused the alleged injury). Thus, the United States is entitled to summary judgment and dismissal of this civil action. *See Fitzgerald*, 679 F.2d at 350; *Dellinger*, 750 S.E.2d at 677; *Farley*, 629 S.E.2d at 745; *Short*, 507 S.E.2d at 131–32; *Hicks*, 358 S.E.2d at 305.

## VI. CONCLUSION

Plaintiffs cannot meet their burden of proof on proximate causation as required by W. Va. Code § 55-7B-3. They have failed to produce expert witness testimony that A.H.'s brain injuries were proximately caused by any alleged negligence which plaintiffs' claim occurred at or near the time of A.H.'s birth. Therefore, the United States is entitled to summary judgment as a matter of law and dismissal from this civil action.

Respectfully submitted,

**MICHAEL B. STUART**
**United States Attorney**

**s/Fred B. Westfall, Jr.**
Fred B. Westfall, Jr. (WV Bar No. 3992)
Assistant United States Attorney
P.O. Box 1713
Charleston, WV 25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov
Counsel for Defendant United States of America

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

RYAN HYSELL and CRYSTAL HYSELL,
on behalf of their daughter, A.H., a minor,

      Plaintiffs,

v.                                                           Civil Action No. 5:18-cv-01375

RALEIGH GENERAL HOSPITAL,
and THE UNITED STATES OF AMERICA,

      Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2020, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to the following CM/ECF participants:

Christopher T. Nace
Barry J. Nace
Matthew A. Nace
Paulson & Nace, PLLC
1025 Thomas Jefferson Street NW
Suite 810
Washington, D.C. 20007
Counsel for Plaintiffs

D.C. Offutt, Jr.
I. Matthew Mains
David L. Shuman, Jr.
Offutt Nord PLLC
949 Third Avenue, Suite 300
P. O. Box 2868
Huntington, WV 25728-2868
Counsel for defendant Raleigh General Hospital

*s/ Fred B. Westfall, Jr.*
Fred B. Westfall, Jr. (WV Bar No. 3992)
Assistant United States Attorney
P.O. Box 1713
Charleston, WV   25326
Phone: 304-345-2200
Fax: 304-347-5443
E-mail: fred.westfall@usdoj.gov
*Counsel for Defendant United States of America*