IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| RYAN HYSELL and CRYSTAL HYSELL, on behalf of their daughter, A.H., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>RALEIGH GENERAL HOSPITAL, *et al.*,<br><br>Defendants. | Case No. 5:18-cv-01375<br>Judge: Frank W. Volk |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY OF DEFENDANT USA'S RESPONSE TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND TO STRIKE
DEFENDANT USA'S TWELFTH AFFIRMATIVE DEFENSE**

*COME NOW* Plaintiffs, by and through undersigned counsel, and respectfully submit to this Honorable Court their Memorandum of Points and Authorities in Reply to Defendant USA's Response to Plaintiffs' Partial Motion for Summary Judgment and to Strike Defendant USA's Twelfth Affirmative Defense. In support thereof, Plaintiffs state the following:

**LEGAL ARGUMENT**

I. **DEFENDANT USA'S HAS FAILED TO DENY ANY OF THE STATEMENTS OF MATERIAL FACT NOT IN DISPUTE; THUS, ACCEPTING THEM ALL AS TRUE.**

Pursuant to Rule 56(e)(2) if a party fails to respond to a statement of material fact the "court may consider the fact undisputed for purposes of the motion." In this matter, Defendant USA has simply failed to even provide any responses to the four statements of material fact. Thus, the Court may, and should, accept as true the following:

1. The West Virginia Medical Professional Liability Act can limit the amount of recoverable non-economic damages through a post-verdict hearing *if* **certain prerequisites are met**.

2. The West Virginia Medical Professional Liability Act states the following: "The limitations on noneconomic damages contained in subsections (a), (b), (c) and (e) of this section **are not available**

to any defendant in an action pursuant to this article which does not have medical professional liability insurance in the aggregate amount of at least $1 million for each occurrence covering the medical injury which is the subject of the action."

3. Defendant United States of America does not have medical professional liability insurance in the aggregate amount of at least $1 million for each occurrence covering the medical injury which is the subject of this action.

4. Defendant United States of American's F.R.C.P. 26(a)(1)(D) states that "[t]his claims [sic] asserted against these defendants in this case are governed by the Federal Tort Claims Act ("FTCA"), 28 U.S. C. §2671, *et seq*. Therefore, no insurance agreement is applicable to this case with regard to any claim asserted against these defendants, the United States of America, or any of its deemed employees."

These facts are uncontested. As a matter of law, under these agreed upon facts, the motion must be granted.

## II. DEFENDANT USA ATTEMPTS TO AVOID THE REQUIREMENTS OF THE MPLA WITH A CIRCULAR ARGUMENT THAT LACKS MERIT.

Plaintiffs do not dispute that the MPLA applies to FTCA cases. In fact, Plaintiffs agree that the ENTIRE MPLA applies[1], especially the requirements set forth under W. Va. Code § 55-7B-8(d). Defendant does not get to pick and choose which sections of the statute apply and which do not.

Defendant USA attempts to assert that this matter is well settled by citing to *Simms v. United States*, 107 F.Supp.3d 561, 578-79(S.D.W.Va. 2015), *aff'd in part, vacated in part*, 839 F.3d 364(4th Cir. 2016). While *Simms* recognized that the arbitrary cap number in no way properly compensated the plaintiffs for their damages and was applicable, the question addressed before the Court today was

---

[1] Plaintiffs do, however, maintain that, despite West Virginia Supreme Court opinions upholding the caps set forth under §55-7B-8, the entire cap is unconstitutional and should not be applied. However, Plaintiffs are bound by the statute just as Defendant USA is.

2

not in any way before the 4th Circuit in the *Simms* matter. *Simms* was instead a case that was analyzing the process in which post-verdict procedures were applicable to potentially reduce the verdict awarded. In fact, none of the cases cited by Defendant have addressed this issue. *See Dawson v. United States*, 11 F.Supp.3d 647 (N.D.W.Va. 2014) in which the question was centered around the determination over whether the non-catastrophic or catastrophic cap applied; *See also Wilson v. United States*, 375 F.Supp.2d 467 (E.D.Va. 2005) in which the 4th Circuit was determining the retroactive effect of the Virginia statute. Thus, there is no precedent as Defendant USA wishes to claim that it is entitled to the application of cap despite the clear language of the statute that removes it from the applicability of the cap simply because it is the government.

Defendant then attempts to argue that the "source of the liability of the United States is the FTCA and not state law." Again, Plaintiffs do not disagree. In fact, Plaintiffs have cited to 28 U.S.C. §2675(b) as it sets the limit for the amount of damages a claimant/plaintiff can seek: "Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." Nothing under the FTCA provisions speaks of a plaintiff being bound to a reduced amount of recoverable damages under state law. Furthermore, Defendant USA's Eleventh Defense to this matter expressly states that "Plaintiff's recovery, if any, against this defendant is limited by the amount specified in the administrative claim submitted to the United States and the sovereign immunity of the United States." *See Doc. No. 17* at p. 5. Again, Plaintiffs do not argue with this statement as the source of the liability originates under the FTCA, which waives the damages amount up to and no greater than that amount submitted through the Form 95 Administrative Claim form. In this case, that sum certain amount sought was $50,000,000.00.

Then, in a dramatic U-turn of legal rationalization, Defendant USA attempts to claim that despite waiving its sovereign immunity under the FTCA that is the source of the liability against the United States and binding Plaintiffs' recovery "by the amount specified in the administrative claim submitted to the United States," somehow the state law automatically applies to the United States. Defendant relies initially upon *Starns v. United States*, 923 F.2d 34 (4th Cir. 1991). *Starns*, however, was a matter in which the plaintiffs were simply trying to say that because the federal government was not licensed by the Commonwealth of Virginia it was not a health care provider under the statute. That is in no way analogous to the argument set forth here. The other cases cited to by Defendant USA were matters in which the argument advanced before the courts of other non-binding jurisdictions dealt with whether the government was a "qualified" health care provider under the statutory language. The issue here is not whether the government is a qualified health care provider, but rather were the negligent parties, *ie.* Midwife Crowder and Access Health, individuals and/or entities of the class of health care providers that the statute was designed to protect. The answer is unequivocally "No."

Pursuant to the West Virginia Court of Appeals, if a party is not of the class that a statute is designed to protect, then that party does not have standing to rely upon such a statute. *See General Pipeline Constr., Inc. v. Hairston*, 234 W.Va. 274, 283 (W.Va. 2014) stating that "the statute is intended to protect the rights of people engaged in the scientific study of ancient, historic graves. Hence, the plaintiffs in this case are not in the class intended to be protected." *See also Hurley v. Allied Chem. Corp.*, 164 W.Va. 268, 271 (W.Va. 1980) in stating "This Court has not had occasion to give detailed consideration to the question of under what circumstances a statute gives rise to an implied cause of action. In oblique reference to this question, we have said in negligence cases that the violation of a statute or ordinance is *prmia facia* evidence of negligence . . . We stated the following qualifications to this rule in Syllabus Point 1 of *Steiner v. Muldrew*, 114 W.Va. 801, 173 S.E. 891 (1934): 'The violation of a statute, intended for the protection of persons of a certain class, cannot be the basis of a cause of

4

action on the part of persons not belonging to the class intended to be protected by the statute.'"(internal citations omitted).

In each of the cases cited to by Defendant USA, the question presented was whether the government had to be insured to be qualified as a health care provider. None of those cases delved into the legislative intent that the states espoused in establishing the caps available to qualified healthcare providers. Those cases failed to take the next step in reasoning because the next step was never addressed. Plaintiffs in this case do not dispute that the Midwife Crowder and Access Health were qualified to be considered health care providers under the MPLA; instead, Plaintiffs are taking the next step in analysis that states that even if they are qualified health care providers under the MPLA, the MPLA does not automatically apply to **all** health care providers because of the language of W.Va. Code 55-7B-8. That is the next step analysis that this Court need also consider.

### III. MIDWIFE CROWDER AND ACCESS ARE NOT OF THE CLASS OF PEOPLE THAT THE MPLA CAP WAS DESIGNED TO PROTECT.

Defendant USA argues that it "has not waived it[s] sovereign immunity under the FTCA so as to allow state law to require its employees and deemed employees to comply with the professional liability insurance requirements imposed by W.Va. Code §55-7B-8(d) before being able to take advantage of the cap on noneconomic damages contained in W.Va. Code § 55-7B-8." (Doc. 123 at p. 7). Defendant USA, however, fails to recognize that it is for this exact reason that the cap under W.Va. Code § 55-7B-8 is not applicable to the conduct of Midwife Crowder and Access Health.

The MPLA was allegedly put into place because: "The cost of liability insurance coverage has continued to rise dramatically, resulting in the state's loss and threatened loss of physicians, which, together with other costs and taxation incurred by health care providers in this state, have created a competitive disadvantage in attracting and retaining qualified physicians and other health care providers." W. Va. Code § 55-7B-1. The sheer force of the FTCA in protecting its employees from individualized exposure to medical malpractice claims precludes and forecloses the state's loss and

threatened loss of physicians employed by the United States Government and working in the State of West Virginia. In other words, the cap was established to lower the cost of malpractice insurance to private physicians so that they would not leave the State in favor of one in which they could obtain more affordable insurance. The FTCA's refusal to waive its sovereign immunity to its employees to require them to carry their own insurance protects its employees from the (perceived) economic hardships of obtaining malpractice insurance and, thus, removes the government's employees from the class of people W.Va. Code 55-7B-8 was designed to protect. If the legislature had wished for all healthcare providers to automatically be granted the privilege of the cap, it would not have carved out an exception and created a specific class of individuals to whom the cap applies.

Defendant USA wishes to say that simply by virtue of the fact that it stands in the place of healthcare providers, it is automatically entitled to the application of the cap. That is not true. Private health care providers with vast sums of money (or no money at all) are free to practice in West Virginia without malpractice insurance. If they do so, they do not get the benefit of the cap. They do so at their own peril. Likewise, Midwife Crowder and Access Health *could* have purchased her/their own insurance policy in the event that she/it were to have acted negligently and the federal government elected not to certify her/it's actions under the Westfall Certification process; however, she/it chose not to and the government chose not to require her/it to purchase such insurance. The Government did this at its own peril.

Furthermore, not all states in the country have caps. It is for that reason that the FTCA establishes an administrative procedure that *requires* a sum certain to be stated by a claimant and if the administrative process is exhausted the FTCA waives its sovereign immunity up to the limit of the sum certain sought in the administrative process. Why should the federal government's exposure be any different in West Virginia as it would be to a similarly situated plaintiff in Washington, D.C., or Nevada, or Pennsylvania, or any other state? As the government has stated, the waiver of sovereign

immunity is dictated by the federal legislation and not the state law. Thus, before this lawsuit was ever filed and the 6-month tolling provision under the FTCA lapsed, by operation of law, the government waived its sovereign immunity up to the amount stated in the Form 95.

### IV. PUBLIC POLICY CONSIDERATIONS SHOULD BE CONSIDERED TO FORBID DEFENDANT USA TO CREATE A LOOPHOLE THAT WOULD PUT AT RISK THE PROTECTIONS W.VA. CODE §55-7B-1, *et seq.* PROVIDES FOR THE CITZENRY OF THE STATE OF WEST VIRGINIA.

There is one important public policy consideration for this Court to analyze in this matter. Defendant USA is essentially informing this Court that it is free to place health care providers in the State of West Virginia who are *uninsurable* as private physicians in the State of West Virginia.

Assume a physician with numerous judgments, complaints, and or allegations of negligence is faced with a proposal of professional malpractice insurance of a heighted value because of the risk analysis that the insurance carriers place on him/her. Regardless of whether such an individual would actually be hired by the Government, it is now the Government's position that that uninsurable physician would be free to work in the State of West Virginia as a federally funded employee. Likewise, the Federal Government does not even need to directly hire that physician. Such a physician could instead seek employment at a federally funded clinic, such as Access, and intentionally not purchase the insurance because he or she would be acting within the scope of his or her employment and covered under the FTCA. Thus, uninsurable and unsafe health care providers would be allowed to practice in the State of West Virginia.

The Court may look at this scenario as an unlikely one; however, the Court cannot disregard that this is the position that Defendant USA is putting forth in opposition to this motion. Such a loophole would destroy the fundamental purpose of the MPLA that is designed not only to protect physicians from increased costs of health insurance but also to provide the citizens of the State of West Virginia with competent health care providers. Defendant USA's position is that it is free to staff

its lower income federally funded clinics with lower skilled healthcare providers. That is *not* in keeping with the letter of the law or even remotely close to the spirit of the law.

## **CONCLUSION**

Midwife Crowder and Access Health are not of the class of individuals that the provisions of W.Va. Code §55-7B-8 was designed to protect. As such, they are not entitled to rely on the statute as an absolute right to all healthcare providers. Instead, such health care providers must meet certain prerequisites to enjoy the privilege of the caps set forth in the MPLA. Neither Midwife Crowder nor Access Health have met those prerequisites. Furthermore, as an intervening party to the case, Defendant USA does not simply get to claim that because it stands in the place of its employees it is automatically entitled to the cap. It is not enough that the United States simply be considered "an insured tortfeasor," because the legislative intent of W. Va. Code §55-7B-1, *et seq.* is not for the betterment of the insurance provider, but rather is created twofold to both protect the private health care providers from inflated premiums on malpractice insurance so that that can purchase it as well as to assure that the citizens of the State are granted access to competent and professional health care.[2] The insurer is granted NO protections under W.Va. Code §55-7B-1, *et seq.,* and the issuer's rights are in fact the rights that the legislation seeks to limit and which no advancement of interests are given. Defendant USA and its agents, servants, and employees are not of the class of individuals that this legislation was created to protect ***because*** the health care providers do not have to go into the public sector to seek malpractice insurance as a result of the FTCA's refusal to waive the government's sovereign immunity in requiring its federal employees to carrier private insurance. Thus, the cap does not apply.

---

[2] For the record, Plaintiffs are in no way claiming that there actually does exist any rational basis to associate the rise of malpractice insurance with some imagined claim that lawsuits based on torts is the cause. The cause of excess verdicts is the negligence of the health care providers, not the existence of a lawsuit.

8

Defendant USA was free to partake in the administrative process of this case and work to resolve the matter prior to the filing of the lawsuit. In fact, the FTCA required a 6-month tolling provision from the date of receipt of the Form 95 that sought a sum certain of $50,000,000. Now, despite knowingly not being in compliance with the language of the MPLA to receive the privilege – not the right – but the privilege of access to the cap provisions, the Government has attempted to assert that waiver of its sovereign immunity under the FTCA is limited by state law. The Government cannot have it both ways. The FTCA is the controlling force on the waiver of sovereign immunity in claims such as these; and the sovereign immunity is waived up to the amount sought in the Form 95. In this case, the Government as expressly waived its sovereign immunity up to $50,000,000. State law does not overrule Federal law when in direct conflict.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court Grant their Partial Summary Judgment and strike Defendant USA's Twelfth Defense and make as a finding of law that Defendant USA has waived its sovereign immunity up to and including damages in the amount of $50,000,000.00.

Respectfully submitted,

PAULSON & NACE, PLLC

*/s/ Matthew A. Nace*
Matthew A. Nace, Esq. #13072
Barry J. Nace, Esq. #7313
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
man@paulsonandnace.com
bjn@paulsonandnace.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

  I hereby certify that on this 21st day of February, 2020, I caused a true and exact copy of the foregoing to be served via the CM/ECF upon:

D. C. Offutt, Jr., Esq.
I. Matthew Mains, Esq.
Shawna N. Pinkerton, Esq.
Offutt Nord Ashworth, PLLC
949 Third Avenue
Suite 300
PO Box 2862
Huntington, WV  25728
Phone: (304) 529-2868
Fax: (304) 529-2999
Email: dcoffutt@offuttnord.com
Email: immains@offuttnord.com
Email: snpinkerton@offuttnord.com
*Counsel for Raleigh General Hospital*

Fred B. Westfall, Jr., Esq.
Jason S. Bailey, Esq.
Jennifer M. Mankins, AUSA
United States Department of Justice
Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV  25301
Phone: (304) 345-2200
Fax: (304) 347-5443
Email: fred.westfall@usdoj.gov
Email: jason.bailey2@usdoj.gov
Email: Jennifer.mankins@usdoj.gov
*Counsel for USA*

                */s/ Matthew A. Nace*
                Matthew A. Nace, Esq.