**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**RYAN HYSELL and CRYSTAL HYSELL,** :
on behalf of their daughter**, A.H.,**
a minor, :

**Plaintiffs,** :

**v.** : **Case No. 5:18-cv-01375**
**Hon. Judge Frank W. Volk**

**RALEIGH GENERAL HOSPITAL,** :
**COMMUNITY HEALTH SYSTEMS, INC.,** :
**D/B/A ACCESS HEALTH, DEBRA** :
**CROWDER, CNM,** and
**THE UNITED STATES OF AMERICA,** :

**Defendants.**

**RALEIGH GENERAL HOSPITAL'S REPLY TO PLAINTIFF'S RESPONSE & OPPOSITION TO RENEWED MOTION TO STRIKE TRIAL TESTIMONY OF THOMAS RUGINO, M.D., AND LAURA LAMPTON, R.N.**

Raleigh General Hospital, by counsel, D.C. Offutt, Jr., Jody Simmons, and the law firm of Offutt Nord, PLLC, and C.J. Gideon, Bryan Essary, and the law firm of Gideon, Essary, Tardio & Carter, PLC, comes now and submits this Reply to the Plaintiff's Response & Opposition to the Renewed Motion to Strike Trial Testimony of Thomas Rugino, M.D., and Laura Lampton, R.N.[1] (the "Plaintiff's Response").

## Discussion

Raleigh General's Renewed Motion to Strike Trial Testimony of Thomas Rugino, M.D., and Laura Lampton, R.N.[2] ("Renewed Motion to Strike"), outlines how Dr. Rugino and Ms. Lampton supposedly had worked together before trial to identify the items to be

[1] The Plaintiff's Response & Opposition to the Renewed Motion to Strike Trial Testimony of Thomas Rugino, M.D., and Laura Lampton, R.N., was filed on July 30, 2021. [Doc. 325].
[2] Renewed Motion to Strike Trial Testimony of Thomas Rugino, M.D., and Laura Lampton, R.N., filed on July 15, 2021. [Doc. 316].

included in the Ms. Lampton's initial report and Life Care Plan dated September 20, 2019 ("First Lampton Life Care Plan"), how Dr. Rugino later told Ms. Lampton to take items related to autism out of the First Life Care Plan, and, quite remarkably, how Ms. Lampton did not remove ***anything*** from her First Life Care Plan after being told to do so and before testifying at trial.[3]

Notably absent from the Plaintiff's Response is any effort whatsoever to explain why Ms. Lampton failed to follow the directives of Dr. Rugino to remove various items from her Life Care Plan or why Dr. Rugino's directives to do so were not timely disclosed to the Defendants. Instead of providing a plausible explanation for these blatant missteps and resultant misrepresentations to the Court and to the Defendants, the Plaintiff minimizes the impact or the importance of these errors because, according to the Plaintiff, this was "fodder for cross-examination." Moreover, these errors would have had a minor impact on the outcome of the case because, as the Plaintiff somehow clairvoyantly concludes, there were simply "one or two" items mistakenly left in Ms. Lampton's Life Care Plan. Neither of these belated efforts to defend Ms. Lampton or Dr. Rugino are supported by the record before the Court or remedy the error created by the Plaintiff.

**A. The Errors Within the Trial Life Care Plan Were Not Timely Disclosed**

The "Timeline of Discovery" section within the Renewed Motion to Strike detailed the chronology of how the pre-trial depositions of Ms. Lampton and Dr. Rugino (taken in January and February 2020, respectively) reflected witnesses' opinions that ***all*** of Aubrie's developmental delays, ***including*** her autism, were caused or exacerbated by

[3] The First Lampton Life Care Plan went unedited until May 17, 2021, when Ms. Lampton updated her Life Care Plan, with the only changes related to updated costs for the items listed therein ("Trial Life Care Plan"). The Trial Life Care Plan was, therefore, substantively indistinguishable from the First Lampton Life Care Plan (except for updated costs) and was used and admitted into evidence at trial.

some untimed hypoxic ischemic injury to the child.[4] In turn, the First Lampton Life Care Plan did ***not*** include any deductions or offsets related to medical care and treatment necessary for the child's autism. ***No*** deductions were warranted because, according to Dr. Rugino (at least before trial), all of the included items and needs were related to the Plaintiff's claims and, in turn, were properly included in the First Lampton Life Care Plan.[5]

On April 21, 2021, Dr. Rugino updated his earlier report to reference the MTHFR mutation and its relationship to autism.[6] This updated report, however, stated the "recommendations outlined previously still represent accurately [Aubrie Hysell's] current total needs and life expectancy."[7]

On May 17, 2021, The First Lampton Life Care Plan was updated by Ms. Lampton to reflect any price changes for the items listed therein ("Trial Life Care Plan"). There were no other pre-trial supplementations or amendments to the First Lampton Life Care Plan, to the Trial Life Care Plan, or to the expected testimony of Dr. Rugino or of Ms. Lampton.

The trial in this case started the very next day, May 18, 2021. On May 24, 2021, Plaintiff began, but did not finish, the live videoconference testimony of Dr. Rugino.[8] Ms. Lampton testified live at trial by videoconference on May 24, 2021,[9] and did so before Dr. Rugino finished his testimony the following day (May 25, 2021)[10] and before Dr. Rugino had presented ***any*** testimony on his review or approval of the Trial Life Care Plan.[11]

---

[4] [Renewed Motion to Strike, Doc. 316: 3-4]
[5] Id.
[6] A copy of this report was filed for the Court's review as Exhibit B to the Renewed Motion to Strike.
[7] *See* Page 3 of Dr. Rugino Report of April 21, 2021 – RGH Defense Exhibit R036A.
[8] Thomas Rugino, M.D., Trial Transcript Vol. III, 682 to 697.
[9] Laura Lampton, R.N., Trial Transcript Vol. IV, 777 to 863.
[10] Thomas Rugino, M.D., Trial Transcript Vol. V, 1024 to 1077.
[11] Id. at 1048 to 1049.

Consequently, when Ms. Lampton was called at trial to discuss the Trial Life Care Plan, conditional objections were made and preserved on the admissibility of this evidence, subject to Dr. Rugino providing the necessary medical and evidentiary support.[12] In response to these objections, counsel for the Plaintiff boldly and unequivocally represented to the Court and to Defense counsel: "I don't think there's any doubt that Dr. Rugino will lay the proper foundation. . . . I'm not worried about being able to link it up."[13] The Court then allowed Ms. Lampton to testify and to explain her Trial Life Care Plan to the jury.[14]

Ms. Lampton's testimony (consistent with her deposition testimony) confirmed Dr. Rugino told her to "include all of those items" listed in his ***initial*** report without any offsets, deductions, or omissions related to autism.[15] Her understanding, "from my conversation with Dr. Rugino, is that everything in [the Trial Life Care Plan] is based upon her current condition" without any separation of autism vs. cerebral palsy vs. some other developmental delays[16] – "he said it did not need to be separated out."[17] Consequently, the Trial Life Care Plan was presented to this Court and to the Jury with "no offsets whatsoever" for autism.[18]

Only after Dr. Rugino finished testifying on May 25, 2021, did it become clear he did ***not*** provide the previously represented and anticipated "proper foundation" or "link" for the admissibility of the Trial Life Care Plan. His testimony instead described that, after

[12] Laura Lampton, R.N., Trial Transcript Vol. IV, 782, 2 to 785, 23.
[13] Id. at 784, 21 to 785, 1.
[14] Ms. Lampton was immediately followed by the Plaintiff's economist (Chad Staller) who provided monetary totals for the items within the Trial Life Care Plan. *See* Chad Staller, Trial Transcript Vol. IV, 864 to 913.
[15] Laura Lampton, R.N., Trial Transcript Vol. IV, 848, 5-20.
[16] Id. at 862, 4-14.
[17] Id. at 834, 3-11.
[18] Id. at 838, 24 to 839, 9.

he learned of the child's genetic testing performed in February 2020[19] (and after the First Life Care Plan had been prepared in September 2019), he claims to have performed some sort of previously undisclosed "line-by-line" review with Ms. Lampton and supposedly "outlined what has to be taken out due to consideration of the fact that [Aubrie] would have been born with autism."[20]

The supposed "line-by-line" review and resultant identification of items to be removed from the Trial Life Care Plan was never disclosed or mentioned in any formal or even informal supplementation from the Plaintiff. This review and Dr. Rugino's directives to remove items from the Trial Life Care Plan were mentioned for the very first time in the second day of Dr. Rugino's trial testimony – after Ms. Lampton had already testified. To now describe these undisclosed and unknown errors as "fodder for cross-examination" of Ms. Lampton revises the procedural history of this case and attempts to obfuscate the evidentiary and substantive errors this creates. Counsel was deprived of ***any*** opportunity to substantively object to the presentation of this proof before it was presented to the Jury or question Ms. Lampton on why she failed to remove the items after being told to do so. The Trial Life Care Plan, as presented to the Jury and admitted into evidence, was clearly not what Dr. Rugino had intended and had approved, and presenting in that fashion was improper.

**B. The Scope of Inappropriate Items In Trial Life Care Plan Is Unknown**

As described above, the first inkling in this case that Dr. Rugino did not unconditionally support the Trial Life Care Plan came during the second day of his trial

[19] Thomas Rugino, M.D., Trial Transcript Vol. V, 1049, 1-6.
[20] Id. at 1049, 12-21.

testimony. That is also when the Court and the Defendants first learned he likewise had directed Ms. Lampton to ***remove*** items from her plan. Again, these revelations came only after Ms. Lampton had been conditionally allowed to testify based on the representations from Plaintiff's counsel quoted above.

Even though Dr. Rugino had not seen any "new updated life care plan" to confirm Ms. Lampton was accurately outlining the child's future needs,[21] no effort was made by the Plaintiff to have Dr. Rugino review and approve portions or sections of Ms. Lampton's plan while he was testifying or to itemize the specific items that should ***not*** be included because of the child's autism.[22] The ***only*** testimony on this issue came when Dr. Rugino alluded to some vague "examples," without any concomitant effort to explain this to be an exhaustive list of the items to be deleted – "for ***instance***, the big ones are she was going to get speech and occupational therapy, in childhood anyway, so I would tend to recommend to take those out of the life care plan."[23]

From this ambiguous testimony, the Plaintiff summarily and without any further explanation concludes only "one or two" items potentially were erroneously included in the Trial Life Care Plan. Even then, according to the Plaintiff, the Jury could have determined what to include and what not to include in any award, remedying any problem in admitting these "one or two" or more erroneous items. However, even Ms. Lampton, with her years of experience in this role, could ***not*** independently identify the needs for

[21] Id. at 1049, 12-21.
[22] Id.
[23] Id. at 1049, 1-11 (emphasis added).

Aubrie Hysell without consulting Dr. Rugino[24] and could not separate out which needs related to the child's cerebral palsy versus the child's autism:[25]

Q. In the 1,200 life care plans that you've prepared and those 1,200 or plus lawsuits you've been involved in, you cannot identify, based on your training, experience and work on these kinds of cases, any needs that would be related to the diagnosis of autism because you just don't have that base of knowledge, do you?

A. I would defer to Dr. Rugino.[26]

The record before the Court does not afford any way to confirm or to identify how many items within the Trial Life Care Plan were inappropriately presented to the Jury. All we know from the record is that Ms. Lampton was told by Dr. Regino to take some undescribed number of items out of the Trial Life Care Plan and that she did not do so.[27] The Plaintiff has provided no explanation for her failure to do so, likely because there is no justifiable excuse available. The strained attempt now to minimize the number of items involved does not overcome the inappropriateness of the presentation and admission of the Ms. Lampton's testimony and the Trial Life Care Plan.

## **Conclusion**

The Trial Life Care Plan, Ms. Lampton's testimony, and the resultant calculations of Mr. Staller should not have been presented at trial or admitted into evidence. They all failed to accurately reflect Dr. Rugino's supposedly supporting opinions and the Plaintiff's Response similarly failed to provide the Court with an excuse for these errors or with a

[24] Laura Lampton, R.N., Trial Transcript Vol. IV, 831, 15 to 832, 14.
[25] Id. at 862, 21 to 863, 7.
[26] Id. at 839, 18-24.
[27] Shanna Huber, R.N., Trial Transcript Vol. VIII, 1648 to 1720. "Absolutely nothing" was taken out or changed on the types of services, treatments, or anything else from the First Life Care Plan of September 30, 2019, as compared to the Trial Life Care Plan of May 17, 2021. Id. at 1663, 20-25; 1670, 2-19

practical remedy. As outlined in the Renewed Motion to Strike,[28] this evidence failed to satisfy the initial hurdle of admissibility under Fed. R. Civ. P. 702 and the ruling in *In re Ethicon, Inc.*, No. 2:12-MD-02327, 2014 WL 186872 (S.D. W. Va. Jan. 15, 2014).[29] The Court should now strike that testimony from the record and should vacate any portion of the Jury's verdict dealing with future damages related to the care of the child. Otherwise, the resolution of this issue should be done in tandem with Raleigh General Hospital's other pending post-trial motions, including a Motion for New Trial and Motions under Fed. R. Civ. P. 50(a) and 50(b).

**RALEIGH GENERAL HOSPITAL,**

**By Counsel**

**/s/D.C. Offutt, Jr.**
D.C. Offutt, Jr. (W.Va. Bar No. 2773)
Jody Offutt Simmons (W.Va. Bar No. 9981)
Offutt Nord, PLLC
949 Third Avenue, Suite 300
P. O. Box 2868
Huntington, WV 25728-2868
*(Counsel for Raleigh General Hospital)*

and

C.J. Gideon, Jr.
Bryan Essary
Gideon, Essary, Tardio & Carter, PLC
315 Deaderick Street
Suite 1100
Nashville, TN 37238
*(Counsel for Raleigh General Hospital)*

---

[28] [Renewed Motion to Strike, Doc. 316: 9-11]
[29] Here, unlike the ***pre-trial*** review of Ms. Lampton's Life Care Plan in *In re Ethicon, Inc.,* the Court is now addressing the remedy of Plaintiff's erroneous use of inadmissible testimony ***during*** trial. Also, Dr. Rugino was the "sole and only basis for what is included" in both of Ms. Lampton's Life Care Plans (Laura Lampton, R.N., Trial Transcript Vol. IV, 831, 15-19) and Ms. Lampton did not independently identify any needs for Aubrie without consulting Dr. Rugino (Id. at 831, 15 to 832, 14), which likely would have resulted in those items not supported by Dr. Rugino being inadmissible at this trial and even in the trial in *In re Ethicon, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**RYAN HYSELL and CRYSTAL HYSELL,** :
on behalf of their daughter**, A.H.,**
a minor, :

**Plaintiffs,** :

**v.** : **Case No. 5:18-cv-01375**
**Hon. Judge Frank W. Volk**

**RALEIGH GENERAL HOSPITAL,** :
**COMMUNITY HEALTH SYSTEMS, INC.,**
**D/B/A ACCESS HEALTH, DEBRA** :
**CROWDER, CNM,** and
**THE UNITED STATES OF AMERICA,** :

**Defendants.**

**CERTIFICATE OF SERVICE**

The undersigned, counsel for Defendant, Raleigh General Hospital, hereby certifies that a true and exact copy of the foregoing, **"Defendant, Raleigh General Hospital's, Reply to Plaintiff's Response & Opposition to Renewed Motion To Strike Trial Testimony of Thomas Rugino, M.D., and Laura Lampton, R.N.,"** has been served upon counsel of record via electronic filing, this **6th** day of **August, 2021**:

Christopher T. Nace, Esq.
Barry J. Nace, Esq.
Matthew A. Nace, Esq.
***Paulson & Nace, PLLC***
1025 Thomas Jefferson St., NW, Suite 810
Washington, DC 20007
*Counsel for Plaintiffs*

Lisa G. Johnston, Esq.
Fred B. Westfall, Jr., Esq.
Office of the United States Attorney
Southern District of West Virginia
Post Office Box 1713
Charleston, West Virginia 25326
*Counsel for Community Health Systems, Inc.
D/b/b Access Health, Debra Crowder, CNM,
And The United States of America*

***/s/*** D. C. Offutt, Jr.
D. C. Offutt, Jr., Esquire (WV #2773)
Jody O. Simmons, Esquire (WV# 9981)