**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

RYAN HYSELL and CRYSTAL HYSELL, on
behalf of their daughter, A.H., a minor,

        Plaintiffs,

*v.*

RALEIGH GENERAL HOSPITAL, *et al.*,

        Defendants.

Case No.  5:18-cv-01375
Judge: Frank W. Volk

**PLAINTIFFS' MOTION TO EXCLUDE AS WITNESSES
AND TO PRECLUDE THE EXPERT REPORTS OF ROGER BERNSTEIN,
THOMAS J. DAWSON, DONALD RYAN AND DANIEL L. SELBY**

*COME NOW* Plaintiffs Ryan and Crystal Hysell, by and through undersigned counsel, and

respectfully submit their Motion to Exclude as Witnesses and to Preclude the Expert Reports of Roger

Bernstein, Thomas Dawson, Donald Ryan, and Daniel Selby. In support thereto, Plaintiffs state the

following:

## I. DEFENDANTS' DESIGNATIONS ARE UNTIMELY AND PREJUDICIAL TO PLAINTIFF.

This Court issued a Scheduling Order on February 27, 2019, wherein it set a deadline for the

completion of discovery by October 4, 2019. (Doc. 34). Defendants' Fed. R. Civ. P. 26(a)(2) reports

were due no later than August 19, 2019. (Doc. 34).

On November 20, 2018, Defendant Raleigh General Hospital filed its Answer to Complaint

(Doc. 11) in which it asserted as its Third Defense "a statutory limit as well as other statutory

provisions," pursuant to West Virginia Code §55-7B-1, *et seq.* Likewise, on December 26, 2018,

Defendant U.S.A. filed its Answer to Complaint (Doc. 17) in which it asserted as its Twelfth Defense

that recovery "is limited by the limitations on damages contained in the West Virginia Medical

Professional Liability Act, W.Va. Code §55-7B-1, *et seq.*

At no point prior to the close of discovery or advance of the deadline to file their expert disclosures did either Defendant designate Messrs. Bernstein, Dawson, or Ryan. (Exhibits 1 & 2). None of these expert witnesses were designated in either Defendants' Rule 26(a)(3) Pretrial Disclosures. (Exhibits 3 & 4). It was not until March 9, 2021 that Defendant RGH issued its Third Supplemental Expert Witness Disclosures that Messrs. Bernstein and Ryan were designated. (Exhibits 5). While Mr. Bernstein issued a report in this matter to be directed at "expert opinion testimony in this matter, post-verdict, pursuant to the provisions of West Virginia Code Section 55-7B-9A, regarding the need for the establishment of a special needs trust and the future collateral source benefits available to A.H." no report was provided by Mr. Ryan aside from three tables attached to Mr. Bernstein's report.

Trial was held in this matter in May of 2021, and a verdict rendered on June 2, 2021. Post-trial motions were briefed and entertained by the Court while it also accepted proposed findings of fact from Plaintiff and Defendant USA before ultimately denying Defendant RGH's post-trial motions and finding in favor of Plaintiff against Defendant USA on March 31, 2022. (Doc. 336). On April 18, 2022, Defendant RGH issued its Eighth Supplemental Expert Witness Disclosure in which it identified Thomas Dawson for the first time to offer "professional expert opinion testimony in this matter, post-verdict, pursuant to the provisions of West Virginia Code Section 55-7B-9A, regarding the future availability of Medicare and Medicaid services." (Exhibit 6). Finally, on May 10, 2022, Defendant RGH issued its Ninth Supplemental Expert Witness Disclosure wherein it filed a supplemental report of Mr. Bernstein with an attachment identified as Mr. Ryan's report, which again consisted merely of three tables, as well as a supplemental report of Mr. Selby. (Exhibit 7).

No leave was ever sought for any of these late filings. No discovery was allowed to be conducted on any of these late filings. No depositions were able to have been conducted on these late witnesses or on these new reports.

Pursuant to Fed. R. Civ. P. 26(b)(1): "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Defendants' non-compliance with the discovery Rules has prejudiced Plaintiffs in this matter.

Plaintiffs also propounded the following Interrogatory upon Defendant Raleigh General Hospital on March 15, 2019:

Identify by name and address any expert that you intend to call as a witness and list for each:

(a)     the specialty of said expert;
(b)     the subject matter about which said expert will testify;
(c)     the substance of the facts about which said expert will testify;
(d)     the substance of the opinions that said expert will give;
(e)     the basis for the opinions that said expert will give, including what information, materials, medical records, documents, and discovery said expert reviewed prior to rendering his opinion;
(f)     the identity of all medical literature on which the expert is expected to rely;
(g)     please attach a copy of any written report provided by each such expert to you or your counsel; and
(h)     attach a copy of a current *curriculum vitae* for each said witness.

Additionally, Defendant RGH's violation of the Rules has left Plaintiffs without the ability to depose these witnesses and discover the basis of their opinions, the methodology employed in the arrival of their opinions, the assumptions relied upon in the formulation of their opinions, and/or any bias or other information that a discovery deposition would allow one to discover. In short, Defendant RGH asserted certain issues pertaining to the MPLA as a defense and then refused to grant Plaintiff the ability to conduct discovery of that defense. Defendant USA has not designated any of these expert

witnesses, but it is anticipated that they will rely upon their general cross-designation of witnesses to also rely upon them.

The Fourth Circuit interprets R 37(c)(1) in *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.,* by affirming a five-factor test:

> We therefore hold that in exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

318 F.3d 592, 597 (4th Cir. 2003). The Defendant's further supplemental disclosures relating to this hearing are all untimely. Because no Michigan Medicaid benefits or services were identified in the Third Disclosure, it was quite surprising when Mr. Dawson suddenly identified specific programs and then suddenly Mr. Selby opines that only $2,758,692 of future medical costs are not covered by Medicaid in A.H.'s life. Similarly, Mr. Dawson's political and economic arguments are new and completely unrelated to the reports in the Third Disclosure. Of course, all these arguments are also surprising to Plaintiffs because Defendant didn't make them during trial when litigating various life care plans.

Even if this Court does permit Mr. Bernstein's May 2022 report to be used by Defendant, Mr. Bernstein's statements relying on Mr. Selby and Mr. Dawson should be precluded from his testimony because Mr. Selby has never been identified as a witness for this hearing and Mr. Dawson was identified after the trial's conclusion.

The Court should not allow the Defendants to utterly refuse to partake in discovery and live up to their duties only to allow them to come in at the 11th hour and claim to have expert witnesses who desire to offer testimony to seek over a $6million reduction in the current judgment in this matter. For these reasons, Defendants should be barred from calling as expert witnesses at any collateral

source hearing Messrs. Bernstein, Dawson, or Ryan or to allow Mr. Selby to testify to the opinions issued in his supplemental report produced on May 10, 2022.

## II.  MR. DAWSON'S EXPERT OPINIONS SHOULD BE PRECLUDED AS THEY ARE NOT SUPPORTED BY A PROPER METHODOLOGY, ARE WHOLLY SPECULATIVE, AND, AT BEST, ARE NO MORE THAN LEGAL OPINIONS.

Mr. Dawson was evidently identified by Defendant RGH to attempt to overcome the insurmountable hurdle set forth under W.Va. Code §55-7B-9a(b) that requires a defendant to meet three prerequisites to seek a collateral source reduction for future benefits:

> **(1)** There is a preexisting contractual or statutory obligation on the collateral source to pay the benefits;
> **(2)** The benefits, to a reasonable degree of certainty, will be paid to the plaintiff for expenses the trier of fact has determined the plaintiff will incur in the future; and
> **(3)** The amount of the future expenses is readily reducible to a sum certain.

Mr. Dawson's directive was clearly an attempt to assert as expert opinion that Medicaid is reasonably certain to exist despite the clear language of this Court in *Simms* that "the current political climate at least suggest that these benefits cannot be guaranteed to a reasonable degree of certainty in the future." *Simms v. United States*, 2017 U.S. Dist. LEXIS 122184, *17 – 18 (August 3, 2017).

Mr. Dawson's testimony reads like a legal memorandum offering little beyond its legal conclusions asserted without a factual basis. The remainder of Mr. Dawson's testimony is simply legal history citing secondary sources. Although Mr. Dawson struggles to come to any actual conclusions beyond speculation, the conclusions in his report are legal interpretations of Medicaid law: "As a Michigan Medicaid beneficiary, Hysell will receive medical assistance and comprehensive services" and "These healthcare coverage options offer comprehensive and cost-effective care for Hysell." Mr. Dawson also makes claims about the current political climate surrounding Medicaid's future that are not only false, contradictory to this court's findings in *Simms* of a "hostile political climate surrounding the future of Medicaid", but also inadmissible as legal conclusions. 2017 U.S. Dist. LEXIS 122184, at *18 (2017).

As stated by this Court, "'opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.'" *Bethune v. Bos. Sci. Corp.*, No. 2:13-cv-06199, 2016 U.S. Dist. LEXIS 66449, *8 (S.D. W. Va. May 19, 2016) citing to *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); see also *Elat v. Ngoubene*, 993 F.Supp.2d 497, 512 (D. Md. 2014) (internal citations omitted): "[a]s a starting point, '[t]estimony that 'states a legal standard or draws a legal conclusion[]' . . . is inadmissible.' Put another way, 'opinions which would merely tell the jury what result to reach are inadmissible.' . . . ('Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it. When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *See also Maryland v. Dent*, 2019 U.S. Dist. LEXIS 69862, *6 (D. Md. April 23, 2019) ("Of import here, testimony that states a legal conclusion is not admissible."); See also *Allstate Ins. Co. v. Rochkind*, 381 F.Supp. 3d 488, 510 (M.D. 2019) ("But, testimony that states a legal conclusion is not admissible. Additionally, 'opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.'") (internal citations omitted); and see also *Obomsawim v. Tempur-Pedic N. Am., LLC*, Civil Action No. WMN-12-3410, 2015 U.S. Dist. LEXIS 15658, *7 (D. Md. Feb. 10, 2015) ("'Put another way, 'opinions which would merely tell the jury what result to reach' are inadmissible.'").

## III.   THIS COURT SHOULD PRECLUDE ALL TESTIMONY ON MEDICAID AND MEDICAID BENEFITS IN THIS COLLATERAL SOURCE HEARING AS IRRELEVANT BECAUSE MEDICAID IS NOT A COLLATERAL SOURCE.

If this court follows the precedent set in *Kenney* and *Simms* finding Medicaid is not a reducible collateral source under West Virginia's Medical Professional Liability Act, then testimony regarding Medicaid is irrelevant. *Kenney v. Liston*, S.E.2d 434, 434-44 (2014); *Simms v. United States*, No. 3:11-0932, 2017 U.S. Dist. LEXIS 122184, at *17 (S.D. W. Va. Aug. 3, 2017). Witnesses' testimony is only

admissible "when helpful to the trier of fact". *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993); *USCS Fed Rules Evid R 704*; Fed. R. Civ. P. 702(a).

Furthermore, as briefed in Plaintiffs' contemporaneously filed Motion to Preclude Defendants' Request for a Collateral Source Hearing Pursuant to the West Virginia Medical Professional Liability Act, benefits paid through the Social Security Act are not collateral sources under the MPLA. Plaintiffs incorporate all such arguments herein, but by way of summary state the following. Pursuant to W.Va. Code, §55-7B-2(b)(1), "Benefits payable under the Social Security Act and Medicare are ***not*** considered payments from collateral sources except for Social Security ***disability*** benefits directly attributable to the medical injury in question." Medicaid is a benefit afforded under the Social Security Act. The statue, however, is in derogation of the common law and requires strict adherence and deference to the common law. "In light of these authorities, we conclude that, where there is any doubt about the meaning or intent for a statute in derogation of the common law, the statue is to be interpreted in the manner that makes the least rather than the most change in the common law. Furthermore, because *W.Va. Code* 55-7B-1 specifies that the MPLA was enacted to alter the 'common law . . . rights of our citizens to compensate for injury and death,' the MPLA is in derogation of the common law and its provisions must generally be given a narrow constriction." *Phillips v. Larry's Drive-in Pharm, Inc.*, 220 W.Va. 484, 492 (W.Va. 2007).

Because Medicaid is not a collateral source under the definition of the MPLA and has already been acknowledged to not be a reducible collateral source by the common law precedents of *Kenney* and *Simms*, the attempt by Defendants' experts to explain potential future Medicaid benefits should be precluded because it is not helpful to the judge in this hearing.

**A.     MEDICAID IS AN EXCEPTION TO THE COLLATERAL SOURCE RULE UNDER W.VA. CODE § 55-7B-2 BECAUSE IT IS SOCIAL LEGISLATION AND PAYABLE UNDER THE SOCIAL SECURITIES ACT.**

In *Kenney*, the Supreme Court of West Virginia set strong precedent that "social legislation" including Medicaid are not benefits under West Virginia's collateral source because "the cases from this jurisdiction and others are clear: 'Only benefits received from the original tortfeasor, the tortfeasor's agent, or a joint tortfeasor reduce a tort defendant's liability.'" *Kenney v. Liston*, 223 W.Va. at 444. Because social legislation is not a payment from the tortfeasor or their agent, it should not qualify under the collateral source rule to reduce the plaintiff's recovery. *Kenny* clarifies that "examples of collateral sources that are inadmissible to reduce a defendant's liability, in both our jurisprudence and that of other states, are legion. Benefits to a plaintiff protected by the collateral source rule come from sources as […] government programs like Medicare and Medicaid." *Id* at 443-44. A defendant should not benefit, nor should a plaintiff be punished because the plaintiff may currently qualify for Medicaid.

This exception for government programs is codified in the definition of collateral source:

(b) "Collateral source" means a source of benefits or advantages for economic loss that the claimant has received from:

(1) Any federal or state act, public program, or insurance which provides payments for medical expenses, disability benefits, including workers' compensation benefits, or other similar benefits. *Benefits payable under the Social Security Act and Medicare are not considered payments from collateral sources* except for social security disability benefits directly attributable to the medical injury in question;

W. Va. Code § 55-7B-2 (emphasis added). Even RGH's own witness Thomas Dawson admits on the first page of his report that Medicaid was created in the Social Security Amendments of 1965. However, all the Defendant's experts who offer their opinions on Medicaid as a collateral source fail

to consider that Medicaid as part of the Social Security Act implies Medicaid benefits are excluded from the collateral source rule as "benefits payable under the Social Security Act".

**B.    MEDICAID IS NOT A COLLATERAL SOURCE BECAUSE THE STATES HAVE A RIGHT TO RECOVER FROM THE PLAINTIFF THROUGH SUBROGATION, LIEN, OR REIMBURSEMENT FOR PAST MEDICAL EXPENSES.**

Defendant attempts to argue through Mr. Bernstein's May 2022 report that Medicaid can be considered a collateral source paying Plaintiff because they do not have a right to recovery from Plaintiff. This recovery exception would only be relevant if the state were a party litigating for past medical expenses, but that is not the facts of this case. Thus, Mr. Bernstein's testimony is completely irrelevant for this hearing.

WV § 55-7B-9a codifies further exceptions to the collateral source rule:

(g) The court may not reduce the verdict rendered by the trier of fact in any category of economic loss to reflect:

(1) Amounts paid to or on behalf of the plaintiff which *the collateral source has a right to recover from the plaintiff through subrogation, lien or reimbursement*

(emphasis added). The states which have given A.H. Medicaid benefits, Ohio, West Virginia, and Michigan, all have lien letters for A.H. establishing their right to recover the expenses incurred for her medical services when she receives payment from Defendants. State law will also allow Michigan to determine if it desires to recover from the plaintiff in the future for future expenses once they are incurred. Michigan Social Welfare Act §400.106:  https://www.michigan.gov/mdhhs/0,5885,7-339-71547_4860-264176--,00.html (last visited May 24, 2022). Therefore, Mr. Bernstein's arguments that a state cannot subrogate from the plaintiff are not only legal conclusions but false. Similar to this issue, *Simms* discussed the standing of asserting a requirement of a reversionary trusts in stating that "the State is not directly involved in this litigation. The federal government does not have the same enforcement interest as the State in this case . . ." *Simms v. United States* at 2017 U.S. Dist. LEXIS

122184, *28 (August 3, 2017). The same rationale should hold true to the State of Michigan's interest in future economic benefits, if any.

### C. DEFENDANTS CANNOT SATISFY THE THREE STATUTORY PRECONDITIONS NECESSARY TO SET A COLLATERAL SOURCE HEARING PURSUANT TO W.VA. CODE § 55-7B-9A.

Something *may* qualify as a collateral source for future medical payments under WV § 55-7B-9a, if

> **(1)** There is a preexisting contractual or statutory obligation on the collateral source to pay the benefits;
> **(2)** The benefits, to a reasonable degree of certainty, will be paid to the plaintiff for expenses the trier of fact has determined the plaintiff will incur in the future; and
> **(3)** The amount of the future expenses is readily reducible to a sum certain.

In *Simms,* this Court established that Medicaid does not qualify as a collateral source for future medical expenses because it fails to meet all three statutory preconditions. *Simms,* 2017 U.S. Dist. LEXIS 122184, at *17-22 (2017). This Court should find that Medicaid fails all three statutory preconditions but need only find that it fails one to disqualify Medicaid as a collateral source.

Medicaid fails the first statutory precondition because it has no preexisting obligation to the Plaintiff for future payments. There is no obvious preexisting contractual obligation between Medicaid and the Plaintiffs. Currently, A.H. is a dependent on her parents' Medicaid coverage. Like the *Simms* defendants, RGH may attempt to argue that Medicaid has preexisting statutory obligation. Although Medicaid may have a current statutory obligation to cover A.H., that obligation is not guaranteed in the future either because A.H. may no longer qualify for the financial hardship requirement or because the program itself may not continue to be funded annually by Congress.

There is uncertainty of Medicaid's future viability, which is why it fails the second precondition. Indeed, this court in *Simms* found:

> "there is real concern that the extent of Medicaid coverage will shrink in the future, which will, in turn, cut benefits to the qualified citizens of the state. These concerns may not come to fruition, but the current political climate at least suggests that these benefits cannot be guaranteed to a reasonable degree of certainty in the future."

*Id* at *17-18. RGH has presented no evidence to suggest that the "hostile political climate surrounding the future of Medicaid" has changed substantially since 2017. *Id* at 18. Thus, the benefits of Medicaid are too uncertain to consider it a collateral source.

This Court also accurately assessed that Medicaid does not actually make payments to the Plaintiff but instead on behalf of the Plaintiff to a medical care provider, thus it fails the requirement that a collateral source must guarantee payments "be paid to Plaintiff"**.** WV § 55-7B-9a. Accordingly, "If a Plaintiff did not 'receive' the Medicaid payments, then Medicaid is not a collateral source". *Simms* at *9 n.2. In this case as well, the Plaintiff has not, nor will she, receive any direct payments from Medicaid and thus Medicaid cannot be a collateral source. This lack of direct payment also invalidates RGH's claims of possible therapy benefits from IDEA as being a collateral source.

Finally, Medicaid benefits are not "readily reducible to a certain sum." WV § 55-7B-9a. This court notes the uncertainty of Medicaid's existence and benefits at a federal level. Witnesses for the Defendants rely on Michigan's Medicaid program when assessing A.H.'s current benefits. However, Medicaid eligibility and benefits vary by state residence, and thus it is unreasonable to determine the value of A.H.'s potential Medicaid benefits during her entire life. For example, Mr. Ryan's analysis is based on Michigan, a state that expanded eligibility by accepting ACA funding; 12 states have not accepted that ACA funding or expanded eligibility to Medicaid. Kaiser Family Foundation, Status of State Medicaid Expansion Decisions: Interactive Map, https://www.kff.org/medicaid/issue-brief/status-of-state-medicaid-expansion-decisions-interactive-map/ (published April 26, 2022).

Some of the programs the Defendants rely upon in their analysis are state waiver programs, such as the M.I. Choice Waiver Program referenced by Mr. Dawson on page 9; state waiver programs vary by state and are not part of the federal mandatory Medicaid coverage. Centers for Medicare and Medicaid Services, Mandatory & Optional Medicaid Benefits, https://www.medicaid.gov/medicaid/benefits/mandatory-optional-medicaid-benefits/index.html

(last visited May 24, 2022); Centers for Medicare and Medicaid Services, State Waivers List, https://www.medicaid.gov/medicaid/section-1115-demo/demonstration-and-waiver-list/index.html?f%5B0%5D=waiver_state_facet%3A806#content (last visited May 24, 2022). Reliance of state waiver programs differentiates the Defendants' offered testimony from that in *Simms* and further makes the Defendants' experts' attempts to quantify the benefits of future Medicaid programs uncertain. Because of the uncertainty in Medicaid eligibility and benefits, Medicaid fails to meet the third statutory precondition as a collateral source.

Because Medicaid is not a collateral source under the MPLA, experts that have proffered testimony regarding the applicability of Medicaid should be stricken as their testimony is not relevant.

## IV.   RELIANCE UPON MR. DAWSON'S FAULTY OPINION INVALIDATES THE OPINIONS OF ALL OTHER PROFFERED DEFENSE EXPERTS.

According to the recent opinion of the Fourth Circuit Court of Appeals in *Sardis v. Overhead Door Corp.* 10 F.4d 268 (4th Cir. 2021), "to the extent an expert makes inferences based on the facts presented to him, the court must ensure that those inferences were 'derived using scientific or other valid methods.'" *Sardis v. Overhead Door Corp.*, 10 F.4d at 281. *Sardis* relied upon *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019) to reiterate that "[w]ithout testing, supporting literature in the pertinent field, peer reviewed publications[,] or some basis to assess the level of reliability, an expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'" *Sardis* at 10 F4th at 292 (emphasis added).

Mr. Dawson's purported opinion is that Medicaid is reasonably certain to exist in the future. This opinion is in direct conflict with the Court's opinion in *Simms* and is not supported by any factual basis or appropriate methodology. It is nothing more than Mr. Dawson's personal musings. Mr. Dawson ignores recent proclamations made from politicians, including those of Senator Rick Scott. Sen. Scott, just this April, proposed a number of policies aimed at defunding federal support for state and local programs and sunsetting all federal legislation. (Exhibit 8). "The Scott proposal to sunset all

legislation every five years would create uncertainty for Americans who rely on Social Security, Medicare, Medicaid and veterans" benefits. Forcing Congress to vote every five years to re-enact every law would put vital programs like Social Security, Medicare, and Medicaid in peril, as many . . . in congress have voted or expressed their support for cutting or privatizing one or more of these programs . . . under the Scott proposal, continued funding for these programs would not be guaranteed, and millions of recipients would face financial insecurity." (Exhibit 8). Mr. Dawson's ultimate opinion is no more than *ipse dixit* testimony that fails the *Daubert* test and the *Sardis* test, and flies directly in the face of *Simms*. Any such opinion should be excluded and not presented as evidence.

Mr. Bernstein authored an initial report that was produced on March 9, 2021. (Exhibit 5). In that report, Mr. Bernstein expressly indicated that "[w]ith respect to matters of West Virginia law applicable to my analysis of this case, I have consulted with Mark Simonton, Esq. of the firm of Offutt Nord PLLC in Huntington, West Virginia." (Exhibit 5 at page 1 of Report). This is the only basis for what Mr. Bernstein offers as his "Expert Qualifications." In other words, Mr. Bernstein is relying upon counsel for Raleigh General Hospital for his opinions and nothing more. He then offered a supplemental report that was produced on May 10, 2022. No additional qualifications were added to this supplemental report. He did, however, indicate that his opinions that "Medicaid and its various Waiver Programs will continue to provide benefits for [A.H.]'s future medical needs" was based upon "Report of Thomas J. Dawson, Esquire, MPH, MA of TD&P Consulting, Inc. (The 'Dawson Report')". (Exhibit 7 at page 2 of Report). No other foundation was provided by Mr. Bernstein for his opinion that Medicaid will continue to provide benefits. The remainder of his opinion is an attack on Judge Chamber's opinion in the *Simms* case: "I do not agree with Judge Chamber's second finding above." (Exhibit 7 at page 4 of Report). Again, he relies upon "The Dawson Report" for this position. Thus, Mr. Bernstein's entire proposed opinion is predicated upon Mr. Dawson's faulty and inadmissible testimony. Such reliance is in violation of *Sardis v. Overhead Door Corp.*, 10 F.4d at 281.

Being in violation of *Sardis* undermines Mr. Bernstein's entire proffered opinion and makes anything he desires to state inadmissible.

Mr. Ryan has not authored any report whatsoever. All we have is an attachment to Mr. Bernstein's report of three tables that indicate certain categories of medical treatment that it appears Mr. Ryan is claiming Medicaid would cover. Mr. Ryan does not indicate what Medicaid would actually pay and does not indicate that A.H. would receive any such payments from Medicaid. On those two facts alone, Mr. Ryan's tables do not comport with the requirements of §55-7B-9a. We have been proffered with no report of Mr. Ryan to establish the foundation or methodology utilized for the information in his tables. For the reasons set forth above, such tables should be excluded.

As also pertains to Mr. Ryan's tables, Mr. Bernstein appears to have relied upon said tables to opine that "[u]using the offsets for available public benefits, and accepting Plaintiff's extended life expectancy, the total costs of care, now to life expectancy is $6,262,277." Again, there is no support or basis for Mr. Ryan's tables, and Mr. Bernstein has done nothing to proffer a sound methodology for such tables. This inappropriate reliance again fails the *Sardis* test and we are left wholly with *ipse dixit* testimony that must be precluded.

Finally, as pertains to Mr. Selby's amended report, there is no relevance for this Court to entertain such an opinion. Without evidence of a collateral source, which Defendants cannot proffer and in light of the faulty and erroneous methodology employed by Mr. Dawson that taints and eliminates the opinion of Mr. Bernstein and the tables of Mr. Ryan, Mr. Selby has no basis to present any evidence on present value reduction to this Court.

In sum, Defendants have lately identified numerous expert witnesses in an attempt to make this Court ignore the precedents set forth in *Kenney* and *Simms*. All of the experts simply ignore the definition of what a collateral source is and is not under the MPLA. Mr. Dawson has been identified to talk about the history Medicaid and to provide merely his *ipse dixit* testimony that Medicaid will last

forever and Mr. Bernstein used that opinion as the basis of his in violation of *Sardis*. None of these opinions meet the *Daubert* test, the *Sardis* test, or the requirements of the MPLA. For that reason, they must all be precluded.

**V.    THE DEFENDANT ASKS FOR A HEARING TO SET MICHIGAN MEDICAID AS A COLLATERAL SOURCE BUT OFFERS NO WITNESSES WITH EXPERTISE IN MICHIGAN MEDICAID.**

If this court were to grant that Medicaid may qualify as a collateral source and that future Medicaid benefits A.H. may qualify for can be quantified into some sum certain, then this court would only want to hear testimony pertaining to A.H.'s Medicaid benefits and eligibility.

Defendants' hearing request is dependent on Mr. Bernstein's reviews of the financial reports of Mr. Ryan.  On the fifth page of Mr. Bernstein's initial report, he explains that in his collaboration with Mr. Ryan: "we are considering future medical care will be provided by Michigan Medicaid and Michigan Medicaid waiver programs." Mr. Dawson also relies on Michigan's waiver programs, noting on page 8 of his report that "waiver programs likely will provide the most comprehensive supplemental coverage". Thus, the defendants have decided that the only real potential collateral source at issue in this hearing would be the Michigan Medicaid program.

By the Supreme Court's interpretation of *Daubert*, expert's testimony must have "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Even a cursory review of the *curriculum vitae* of their experts shows they have not worked, practiced, or given testimony in Michigan. The defendant does not offer specific evidence of any expertise in Michigan's Medicaid benefits or A.H.'s eligibility in Michigan's program, which is the relevant collateral source the defendant is attempting to set in this hearing.

**A.    ROGER BERNSTEIN**

When introducing Mr. Bernstein in their Third Disclosure, Defendant claims he "will offer professional expert testimony […] regarding the need for establishment of a special needs trust and

the future collateral source benefits available to A.H." Mr. Bernstein's only legal practice was in Florida and has primarily testified in cases in Florida. In his own qualifications on the first page of his initial report, Mr. Bernstein claims expertise from his work reviewing life care plans and administering special needs trusts. Mr. Bernstein does not claim any expertise in Michigan or even assessing the value of Medicaid benefits.

Therefore, Mr. Bernstein's testimony on what benefits A.H. may receive from Michigan Medicaid should be precluded because Mr. Bernstein lacks expertise on Michigan Medicaid to be able to make a reasonable analysis of Michigan's Medicaid's potential benefits. Such analysis that should be precluded would be Mr. Bernstein's assertion on page 10 of his March 2021 report and on page 8 of his May 2022 report that the Lampton LCP ignores the "public benefits freely available" to A.H. that she "is currently using and will continue to do so in the future."

### B.    THOMAS DAWSON

When introducing Mr. Dawson in their Eighth Disclosure, Defendant claims he "will offer professional expert opinion testimony […] regarding the future availability of Medicare and Medicaid services." Mr. Dawson's consulting firm is based out of Maryland and works mostly in the D.C. metropolitan area. Mr. Dawson mostly has experience with federal healthcare policy development, having written articles only on the effects of the federal ACA. Mr. Dawson's lack of personal knowledge or experience with Michigan's Medicaid is evident by his need to continually refer to secondary sources on the ACA impact in Michigan and simply reverting to general claims of the federal requirements of the ACA.  However, Mr. Dawson's broad claims that lead him to conclude "As a Michigan Medicaid beneficiary, Hysell will receive medical assistance and comprehensive services" should be precluded. Mr. Dawson is simply not qualified to speak to the benefits or comprehensiveness of Michigan Medicaid and the court should not allow such an assertion as testimony. This court should also find no need for Mr. Dawson's testimony on Michigan Medicaid

because the factfinder can follow Mr. Dawson's simple methodology of looking at the state's Medicaid website.

Mr. Dawson also attempts to testify to the Michigan Disability programs in public schools for which he has no experience. Mr. Dawson has not published any work on IEPs or the IDEA, and as such his testimony on pages 10 and 11 should be precluded.

### C.      DONALD RYAN

When introducing Mr. Ryan in the Third Disclosure, Defendant claims he "will offer professional expert testimony […] regarding the availability of and entitlement of certain future collateral source benefits available to A.H." Mr. Ryan's employer, National Care Advisors, is based in Ohio and has many regional offices but none in Michigan. Mr. Ryan possesses many nursing board certifications, but none are for Michigan. Mr. Ryan did not receive any of his education in Michigan.

It is difficult to scrutinize Mr. Ryan's conclusions on Michigan Medicaid benefits because Mr. Ryan's methodology is not included by the defendant, merely a table of his numerical conclusions. However, based on Mr. Bernstein's assertion that they relied on Michigan Medicaid for claims in Mr. Ryan's table that certain items are "Medicaid covered" should be precluded because Mr. Ryan has no expertise in what Michigan Medicaid may cover.

### D.      DANIEL SELBY

Defendant never clarifies if Mr. Selby will be used in this hearing or for what field he would be tendered as an expert. Based on his qualifications attached to the defendant's Seventh Disclosure and used in the trial, Mr. Selby may only be qualified as an economist who can give the present value of a future cost. Mr. Selby detrimentally relies upon Mr. Ryan's analysis, thus, if Mr. Ryan's analysis is precluded, Mr. Selby's economic analysis would be irrelevant as not helpful to the finder of fact.

## VI.   ROGER BERNSTEIN AND THOMAS DAWSON ONLY OFFER LEGAL CONLCUSIONS.

Defendant brings forward two experts with legal degrees, Mr. Bernstein and Mr. Dawson, asks them to rely on their legal expertise to make conclusions, and attempts to substitute these experts' opinions for the judgement of the factfinder.

As stated by this Court, "'opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.'" *Bethune v. Bos. Sci. Corp.*, No. 2:13-cv-06199, 2016 U.S. Dist. LEXIS 66449, *8 (S.D. W. Va. May 19, 2016) citing to *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *see also Elat v. Ngoubene*, 993 F.Supp.2d 497, 512 (D. Md. 2014) (internal citations omitted): "[a]s a starting point, '[t]estimony that 'states a legal standard or draws a legal conclusion[]' . . . is inadmissible.' Put another way, 'opinions which would merely tell the jury what result to reach are inadmissible.' . . . ('Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it. When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.'" *See also Maryland v. Dent*, 2019 U.S. Dist. LEXIS 69862, *6 (D. Md. April 23, 2019) ("Of import here, testimony that states a legal conclusion is not admissible."); See also *Allstate Ins. Co. v. Rochkind*, 381 F.Supp. 3d 488, 510 (M.D. 2019) ("But, testimony that states a legal conclusion is not admissible. Additionally, 'opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.'") (internal citations omitted); and see also *Obomsawim v. Tempur-Pedic N. Am., LLC*, Civil Action No. WMN-12-3410, 2015 U.S. Dist. LEXIS 15658, *7 (D. Md. Feb. 10, 2015) ("'Put another way, 'opinions which would merely tell the jury what result to reach' are inadmissible.'").

### A.    Roger Bernstein

Mr. Bernstein offers little to help the factfinder in this case beyond his own legal conclusions, which of course Mr. Bernstein states that he created in consult with defendant's counsel. ("With respect to matters of West Virginia law applicable to my analysis of this case, I have consulted with Mark Simonton, Esq. of the firm of Offutt Nord PLLC") The defendant simply guises its own legal arguments as the expert testimony of Mr. Bernstein.

The first legal conclusion Mr. Bernstein makes is a baseless claim that he does "not agree with Judge Chamber's second finding" in his *Simms* opinion. Such a bold legal argument asking this court to disagree with its own opinion only five years later must not be admissible.

Mr. Bernstein also decides to interpret federal Medicaid law and determines that "Medicaid has no subrogation right or lien to that can be asserted against the recovery in this case allocable to future medical benefits." Aside from the fact that Mr. Bernstein is simply incorrect (stated *supra*), such conclusions are inadmissible. Mr. Bernstein also makes many legal claims about the Medicaid subrogation based on the false presumption that A.H. must have a special needs trust established at the end of these proceedings.

Finally, Mr. Bernstein also asserts legal conclusions on Medicaid eligibility and determine that A.H. "will continue to [use Medicaid benefits] in the future". Although this legal conclusion is completely out of Mr. Bernstein's field of expertise (stated *supra*), asking the factfinder to simply find Medicaid benefits as guaranteed in the future is inadmissible testimony.

### B.    Thomas Dawson

Like Mr. Bernstein, Mr. Dawson's testimony reads like a legal memorandum offering little beyond its legal conclusions asserted without a factual basis. The remainder of Mr. Dawson's testimony is simply legal history citing secondary sources. Although Mr. Dawson struggles to come to any actual conclusions beyond speculation, the conclusions in his report are legal interpretations of

Medicaid law: "As a Michigan Medicaid beneficiary, Hysell will receive medical assistance and comprehensive services" and "These healthcare coverage options offer comprehensive and cost-effective care for Hysell". Mr. Dawson also makes claims about the current political climate surrounding Medicaid's future that are not only false, contradictory to this court's findings in *Simms* of a "hostile political climate surrounding the future of Medicaid", but also inadmissible as legal conclusions. 2017 U.S. Dist. LEXIS 122184, at *18 (2017).

## VII.   DEFENDANT'S WITNESSES OFFER MERE SPECULATION ON THE LEGALLY UNCERTAIN MEDICAID BENEFITS AND ELGIBILITY, OFFERING NO VALID METHODOLOGY FOR THEIR OPINIONS.

If this court still entertains Defendants' witnesses as qualified to testify on Michigan Medicaid or A.H.'s Medicaid benefits, Defendants' witnesses would still be precluded from offering testimony that is not reliable or factually-based. USCS Fed Rules Evid R 702 governs the admission of expert witnesses:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the *testimony is based on sufficient facts or data*;
> > (c) the *testimony is the product of reliable principles and methods*; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

USCS Fed Rules Evid R 702 (emphasis added).

In addition to Fed. R. Evid. 702, standard of evidence in this hearing is set by W.Va. Code §55-7B-9a(b). Testimony attempting to speak to "the benefits…payable to the plaintiff" of Medicaid, the collateral source the defendant is trying to set in this hearing, must meet the standard of "a reasonable degree of certainty". W.Va. Code §55-7B-9a(b). Testimony attempting to quantify the benefits of Medicaid to a "sum" must meet a higher standard of "certain". *Id.*

The defendant's witnesses offer no testimony that is (1) based on sufficient facts or data, (2) the product of reliable principles and methods, and (3) certain or a reasonable degree of certainty to be true.

### A.   Roger Bernstein

Mr. Bernstein offers none of his own facts or data, substituting this basis for legal codes. Accordingly, Mr. Bernstein offers no reliable methods to reach his conclusions, instead coming to legal conclusions based on case facts and his opinion on the law. Mr. Bernstein's ultimate conclusion that A.H. will continue to use Medicaid benefits is based on Mr. Dawson's report and his own analysis of Medicaid law, not substantial facts or data.

The only unique area of expertise for which Mr. Bernstein attempts to offer opinions is the creation and administration of special needs trust. In Mr. Bernstein's May 2022 report, he claims that "Aubrey Hysell will be the beneficiary of a special needs trust" but offers no reason for this conclusion beyond this "methodology" in his March 2021 report: "The preferred practice when receiving a tort recovery for an individual with a disability, who is otherwise eligible or who may become eligible for means-tested public benefits is to utilize 'a special needs trust'". This analysis of A.H. being the beneficiary of a special needs trust is simply not based on sufficient facts, or really any facts. Mr. Bernstein's experience with trusts that might qualify him as an expert are not a reliable method of creating opinions on A.H.'s financial prospects. Finally, this analysis on special needs trust is being used by Mr. Bernstein to conclude that the plaintiff would not be subject to subrogation by state Medicaid programs and attempts to contribute to a conclusion that A.H. benefits are "reasonably certain". However, a "preferred practice" in tort recovery does not actually mean these benefits are "reasonably certain".

### B.      Thomas Dawson

Mr. Dawson's opinion that "the elimination of Medicaid would be improbable" is purely speculative because he does not think such repeal would ever happen.  However, the defendant must bring forward evidence that Medicaid, the collateral source RGH is attempting to set, would be "reasonably certain" not just "probable". Therefore, Mr. Dawson's analysis does not meet the standard of evidence required under W.Va. Code §55-7B-9a(b).

Mr. Dawson attempts to conclude that A.H. will have Medicaid benefits in the future, but at no time offers a testimony with any reasonable degree of certainty required to determine her eligibility. Mr. Dawson even admits Medicaid "limits participation to financial need" and could not be reasonably certain A.H. would qualify at any future point. His testimony on the benefits of Michigan Medicaid that A.H. may receive are purely speculative, and Mr. Dawson as a lawyer knows this and couches his entire testimony in qualifiers such as "*If* Hysell has Medicaid, she *may be eligible* for the Home and Community-Based Services (HCBS) Children's Waiver Program (CWP) until the age of 18, at which point *she may apply* for the Michigan Choice Program (MI Choice)". (emphasis added.)

### C.      Donald Ryan

The defendant simply fails to include any methodology behind Mr. Ryan's testimony. Mr. Ryan's "report" is only included as an attachment to Mr. Bernstein's report and then later repeated as an attachment Mr. Selby's report. Without any methodology, Mr. Ryan's claims that services within the life care plans are "Medicaid covered" should fail Fed. R. Evid. 702 and W.Va. Code §55-7B-9a(b) because it is impossible to know if this testimony is based on sufficient data, is the product of reliable methods, or quantifies Medicaid benefits with certainty.

### D.      Daniel Selby

Mr. Selby's report is inadmissible because it detrimentally relies on Mr. Ryan's report, which is inadmissible under R 702 and W.Va. Code §55-7B-9a(b).

**VIII.   ALL OF THE DEFENDANT'S EXPERT REPORTS, THOMAS DAWSON, AND DANIEL SELBY ARE IDENTIFIED LATE IN THESE PROCEEDINGS TO BE CONSIDERED FOR A § 55-7B-9a HEARING ON JUNE 27, 2022.**

The defendant was aware of an intent to pursue §55-7B-9a hearing well before the trial when they filed their 3rd Disclosure on March 09, 2021. This was the only the proper disclosure of expert witnesses or expert witness testimony made prior to the final disclosure of findings of fact on May 03, 2021. If this court finds a hearing necessary any testimony appropriate, then the only witnesses or testimony allowed should be those included in this 3rd Disclosure, Mr. Bernstein, Mr. Ryan, and their March 2021 reports. USCS Fed. Rules Civil Proc. R 37(c)(1) governs the late identification of expert witnesses and information.

<u>**CONCLUSION**</u>

For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court GRANT their Motion to Preclude and/or Exclude the Testimony of Defendant's Collateral Source "Experts."

Respectfully submitted,

PAULSON & NACE, PLLC

 /s/  Matthew A. Nace
Matthew A. Nace, Esq. #13072
Christopher T. Nace, Esq. #11464
1025 Thomas Jefferson St., NW
Suite 810
Washington, DC 20007
202-463-1999 – Telephone
202-223-6824 – Facsimile
*man@paulsonandnace.com*
*ctnace@paulsonandnace.com*
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2022 I caused a true and exact copy of the

foregoing to be served via CM/ECF upon:

Mr. Fred B. Westfall, Jr., Esq.
Jason S. Bailey, Esq.
Jennifer M. Mankins, Esq.
United States Department of Justice
Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
Phone: (304) 345-2200
Fax: (304) 347-5443
Email Address: fred.westfall@usdoj.gov
Email Address: jason.bailey2@usdoj.gov
Email Address: jennifer.mankins@usdoj.gov
*Counsel for USA*

Bryan Essary, Esq.
C.J. Gideon, Jr., Esq.
Gideon, Essary, Tardio & Carter PLC
315 Deaderick Street
Suite 1100
Nashville, TN 37238
Phone: (615) 254-0400
Fax: (615) 254-0459
Email Address: bryan@getclawfirm.com
Email Address: cg@getclawfirm.com
*Counsel for RGH*

D. C. Offutt, Jr., Esq.
Jody O. Simmons, Esq.
Shawna N. Pinkerton, Esq.
Offutt Nord Ashworth, PLLC
949 Third Avenue
Suite 300
PO Box 2862
Huntington, WV 25728
Phone: (304) 529-2868
Fax: (304) 529-2999
Email Address: dcoffutt@offuttnord.com
Email Address: jsimmons@offuttnord.com
Email Address: snpinkerton@offuttnord.com
*Counsel for RGH*

 */s/ Matthew A. Nace*
Matthew A. Nace, Esq.